[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11104
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00065-HES-JBT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY ALLEN WEEKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 31, 2013)

Before CARNES, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

Timothy Weeks appeals his 180-month sentence imposed after pleading

guilty to one count of possession of a firearm and ammunition as a convicted felon,

in violation of 18 U.S.C. § 922(g)(1).  Weeks contends that the district court erred

in imposing the mandatory minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), based on his prior felony convictions for three burglary offenses and one count of aggravated battery.

## I.

Weeks was indicted by a federal grand jury on one count of possessing a firearm and ammunition as a convicted felon. The indictment specifically alleged that Weeks had been convicted of five prior felony offenses in Florida: three for burglary of a structure, one for possession of burglary tools, and one for aggravated battery with a deadly weapon. The indictment indicated that two of the burglary convictions arose from a single criminal case, and that all of the prior convictions, except for aggravated battery, were entered on April 1, 1999. The indictment did not list the dates on which any of the underlying offenses occurred.

Weeks pleaded guilty to the charged offense without a written plea agreement and, at his plea colloquy, admitted only that he had a prior felony conviction for possession of burglary tools. Weeks' presentence investigation report found that he was subject to an enhanced mandatory minimum sentence under the ACCA because he had four prior convictions for violent felonies that were "committed on occasions different from one another," specifically his three prior convictions for burglary of a structure and his conviction for aggravated battery with a deadly weapon.

2

Weeks objected to the application of the ACCA on numerous grounds. First, he maintained that the district court could not impose an enhanced sentence under the ACCA without violating his Fifth and Sixth Amendment rights because the government did not allege in the indictment or prove beyond a reasonable doubt that his prior qualifying convictions were committed on occasions different from one another, as required by § 924(e).  Second, Weeks asserted that two of the burglary convictions should count as a single qualifying offense because they occurred on the same day, December 2, 1997, and involved two businesses that were only 56 feet apart from one another, a distance that could be covered on foot in approximately 13 seconds.  Finally, he objected to the PSI's factual summaries of his underlying offenses under Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254 (2005), because they were based on arrest reports and booking sheets, not the charging documents, terms of any plea agreements, or comparable judicial records.

Weeks reiterated his arguments at sentencing and moved to withdraw his guilty plea and to be allowed to submit his status under the ACCA to a jury.  The district court denied the request, concluding that the question of whether his prior offenses were separate and distinct was a sentencing issue that did not need to be submitted to a jury.  The government then introduced the charging documents and final judgments for Weeks' prior burglary convictions, as well as the final judgment for his conviction for aggravated battery.  One information charged

3

Weeks with unlawfully entering a My Pizza restaurant on November 27, 1997, with the intent to commit theft therein.  The corresponding final judgment showed that Weeks pleaded nolo contendere to burglary of a structure, a third-degree felony, on April 1, 1999.  The second information, which charged Weeks with two counts of burglary of a structure, alleged that Weeks and two cohorts unlawfully entered Shirley's Restaurant on December 2, 1997, with the intent to commit theft therein, and unlawfully entered the Florida Times Union Building that very day with the same intent.  The final judgment showed that Weeks pleaded nolo contendere to those charges on April 1, 1999.  The final judgment for Weeks' conviction for aggravated battery with deadly weapon merely established that he pleaded guilty to that offense on April 1, 1999.

Weeks again objected to the classification of the two burglaries committed on December 2, 1997, as separate and distinct offenses, arguing that the spatial and temporal proximity of Shirley's Restaurant and the Florida Times Union Building did not leave him with enough time "to make a new and different intent to enter into a separate building."  The district court overruled Weeks' objection, finding that his prior burglary and aggravated battery offenses were each separate and distinct.  As to the two burglaries committed on December 2, 1997, the district court noted that the charging documents showed that they involved separate structures and then explained:

4

> There is nothing in the record that shows the distance or the time that one would take to get from one building to the other, but the elements of [a] burglary offense would require an entering.  If one enters a structure, they then have to leave the structure before entering a second structure, so as far as the Court is concerned, there is a break between the first burglary of Shirley's Restaurant and the second of the Times-Union building.

The court then sentenced Weeks to 180 months imprisonment, the mandatory minimum sentence prescribed by the ACCA.

## II.

Weeks first contends that the district court violated his Fifth and Sixth Amendment rights by judicially determining that his prior convictions were "committed on occasions different from one another," as required by the ACCA. Weeks argues that, in light of the Supreme Court's decision in Nijhawan v. Holder, 557 U.S. 29, 129 S.Ct. 2294 (2009), circumstance-specific facts, like those required under the ACCA's different-occasions inquiry, may not serve as a basis for sentencing enhancements unless they are alleged in an indictment and proven to a jury beyond a reasonable doubt.[1]

We review de novo properly preserved constitutional challenges to a sentence.  United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).  Under the

---

[1] Weeks also maintains, for purposes of preservation only, that the district court lacked the authority  to impose an enhanced sentence under the ACCA because he did not admit to the existence of his predicate offenses when he pleaded guilty to the felon-in-possession charge. Weeks acknowledges, however, that this argument is foreclosed by still-binding Supreme Court precedent.  See Almendarez-Torres v. United States, 523 U.S. 224, 226–27, 118 S.Ct. 1219, 1222–23 (1998) (recognizing that the "fact of an earlier conviction" may be constitutionally determined by a judge).  We therefore decline to address this issue.

ACCA, a defendant convicted under 18 U.S.C. § 922(g) is subject to a mandatory minimum sentence of 15 years imprisonment if he has three prior convictions for a violent felony or serious drug offense "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In Almendarez-Torres v. United States, 523 U.S. 224, 226–27, 118 S.Ct. 1219, 1222–23 (1998), the Supreme Court held that the government need not allege in its indictment or prove beyond a reasonable doubt that a defendant had prior convictions in order for a sentencing court to use those convictions for purposes of enhancing a sentence. The Supreme Court reaffirmed this principle in Apprendi v. New Jersey, holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63 (2000) (emphasis added). More recently, the Supreme Court concluded that, in determining whether a prior conviction constitutes a "violent felony" for ACCA purposes, a sentencing court may not look beyond the statutory elements, charging documents, any plea agreements or colloquies, explicit factual findings to which the defendant assented, or some comparable judicial record of this information. Shepard, 543 U.S. at 16, 26, 125 S.Ct. at 1257, 1263.

Since Shepard, we have consistently held that Almendarez-Torres remains good law, and we have explained that, for ACCA purposes, district courts may

determine both the existence of prior convictions and the factual nature of those convictions, including whether they were committed on different occasions, so long as they limit themselves to Shepard-approved documents.  See United States v. Sneed, 600 F.3d 1326, 1332–33 (11th Cir. 2010) (holding that "sentencing courts may look to certain facts underlying [a] prior conviction" in making the "different occasions inquiry," but must limit themselves to Shepard-approved sources); United States v. Greer, 440 F.3d 1267, 1273–75 (11th Cir. 2006) (explaining that Almendarez-Torres remains binding until it is overruled by the Supreme Court and that it permits judges to determine both the existence and factual nature of a prior conviction).  We have also expressly rejected the notion that the ACCA's different-occasions determination, unlike the mere fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt. United States v. Spears, 443 F.3d 1358, 1361 (11th Cir. 2006).

Contrary to Weeks' contentions, nothing in Nijhawan undermines our prior decisions to the point of abrogation, such that we can disregard them.  See Sneed, 600 F.3d at 1332 (explaining that, under the prior precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc").  In Nijhawan the Supreme Court considered whether immigration courts could inquire into the underlying facts of an alien's prior fraud conviction for

7

purposes of determining whether the loss to the victims exceeded $10,000 and, thus, constituted an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). 557 U.S. at 32–34, 129 S.Ct. at 2297–99. The Supreme Court held that the loss determination called for a "circumstance-specific approach," unlike the "categorical" or "modified categorical" approach for assessing whether a prior conviction qualifies as a "violent felony" under the ACCA, and that an immigration court could therefore consider the circumstances surrounding the prior conviction without limiting its inquiry to Shepard documents. Id. at 34–43, 129 S.Ct. at 2299–2303. During its discussion, the Supreme Court also noted the alien's argument that a circumstance-specific approach "could create potential constitutional problems in a subsequent criminal prosecution" under 8 U.S.C. § 1326, which criminalizes illegal reentry after removal and imposes a higher maximum sentence when an alien's removal followed a conviction for an aggravated felony. Id. at 40, 129 S.Ct. at 2302. Without much discussion, the Court stated that "any constitutional concern" was eliminated by the government's concession that a jury would have to find the loss amount beyond a reasonable doubt at a later trial for illegal reentry. Id.

At most, Nijhawan merely implies that an immigration court's findings may not provide a constitutional basis for later sentencing enhancements if they are not appropriately limited to Shepard sources. Because Nijhawan does not even

8

suggest that circumstance-specific determinations made for ACCA purposes must be proven to a jury beyond a reasonable doubt, we are bound by our prior holdings that district courts may determine the factual nature of prior convictions, including whether they were committed on different occasions, so long as they limit themselves to Shepard-approved sources.  See United States v. Kaley, 579 F.3d 1246, 1253 (11th Cir. 2009) (explaining that, to constitute an "overruling" for purposes of the prior precedent rule, the Supreme Court decision "must be clearly on point" and "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel").

Accordingly, the district court had the authority to apply the ACCA enhancement based on its own factual findings.

## III.

Weeks alternatively contends that, even if sentencing courts may permissibly find that a defendant's prior convictions were committed on different occasions, the district court erred in doing so because the Shepard-approved documents presented by the government were insufficient to support such a finding.  Weeks maintains that, because the government did not introduce the charging document to establish the timing of his aggravated battery offense, there was no basis upon which the district court could find that the offense was committed on a separate occasion from his burglary convictions.  As to the

burglary convictions, Weeks first contends that the district court could not rely on the dates in the charging documents—November 27, 1997, and December 2, 1997—because the date of a crime is not an element of the offense. He also argues that the mere fact that two different structures were involved in the December 2 burglaries is not determinative of the different-occasions inquiry. And for the first time on appeal, he maintains that he could have pleaded guilty to one count of burglary based solely on the conduct of his two accomplices, making it impossible to determine whether he himself burglarized more than one structure or whether the burglaries were committed successively.

We review de novo whether crimes were committed on different occasions within the meaning of the ACCA. United States v. Canty, 570 F.3d 1251, 1254–55 (11th Cir. 2009). However, we review specific objections or arguments not raised in the district court only for plain error. United States v. Massey, 443 F.3d 814, 819 (11th Cir. 2006) (holding that specific objections to a sentence must be clearly raised before the district court in order to be properly preserved for appeal, and that a defendant "fails to preserve a legal issue for appeal if the factual predicates of an objection are included in the sentencing record, but were presented to the district court under a different legal theory").

To satisfy the ACCA's different-occasions requirement, a defendant must have at least three prior convictions for crimes "that are temporally distinct."

10

Sneed, 600 F.3d at 1329 (quotation marks omitted). "[S]o long as [the] predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA." United States v. Pope, 132 F.3d 684, 692 (11th Cir. 1998). "Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small," and two offenses are considered distinct if "some temporal 'break' occurs between [them]." Id. at 690.

Weeks has not demonstrated that the district court erred in determining that his three burglary offenses were committed on different occasions. The charging documents, which indicated that one of the burglary offenses was committed five days before the other offenses, were sufficient to establish that one of those offenses was temporally distinct for ACCA purposes. See United States v. Turner, 626 F.3d 566, 572 (11th Cir. 2010) (noting that sentencing enhancements need only be established by a preponderance of the evidence). Moreover, the charging documents showed that the burglaries involved three separate structures and victims, which adequately supports the district court's determination that they each constitute separate criminal episodes. The fact that the December 2 burglaries occurred within close proximity to one another is not determinative, as even small gaps in time and place are sufficient to establish separate offenses. See Pope, 132 F.3d at 692 (holding that the burglary of two offices separated by 200 yards, and

11

committed in immediate succession, qualified as separate offenses under the ACCA); United States v. Proch, 637 F.3d 1262, 1265–66 (11th Cir. 2011) (holding that two burglary offenses "committed on the same day at separate addresses on the same street" constituted separate and distinct criminal episodes).

Although Weeks now contends that, on December 2, 1997, he could have remained in one of the burglarized buildings while his two accomplices simultaneously burglarized the other, he did not make that argument before the district court. To the contrary, he merely argued that he could not have formulated a separate intent to burglarize the second location in the 13 seconds that it would have taken him to walk the 56 feet between the two buildings. We therefore review his current argument only for plain error. See Massey, 443 F.3d at 819. Generally, there "can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving [an issue]." United States v. Castro, 455 F.3d 1249, 1253 (11th Cir. 2006). Weeks fails to identify any binding precedent from this Court or the Supreme Court holding that a different-occasions determination cannot be made where a charging document, though listing separate offense locations, fails to specify whether all of the named defendants participated as principals in each offense. It is also noteworthy that the charging document for the December 2 burglaries alleges that Weeks and his cohorts unlawfully entered both buildings, and nowhere indicates that Weeks merely participated as an

accomplice in one of the burglaries.  Under the circumstances, Weeks has not shown that the district court plainly erred in concluding that he physically participated in both of the December 2 burglaries and that, as a result, they were successive rather than simultaneous.  As we have said in a related context, the "ACCA does not require metaphysical certainty" and "courts should not refuse to apply it because of divorced-from-reality, law-school-professor-type hypotheticals that bear no resemblance to what actually goes on."  United States v. Rainer, 616 F.3d 1212, 1216 (11th Cir. 2010) (quotation marks omitted).

Because Weeks has not demonstrated that the district court erred in classifying his three burglary convictions as separate predicate offenses under the ACCA, we need not consider whether Weeks' conviction for aggravated battery can serve as a fourth qualifying offense.

## IV.

As a final argument, Weeks contends that his three burglary convictions cannot serve to enhance his sentence because the residual clause of the ACCA, which defines a "violent felony" as any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," is unconstitutionally vague.  See 18 U.S.C. § 924(e)(2)(B)(ii).  The argument is unavailing for two distinct reasons.  First, the Supreme Court has twice expressed the view that the residual clause of the ACCA is not unconstitutionally vague,

13

which effectively forecloses us from adopting a contrary conclusion.  See James v. United States, 550 U.S. 192, 210 n.6, 127 S.Ct. 1586, 1598 n.6 (2007) (rejecting the view that the residual clause is unconstitutionally vague because it "is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits"); Sykes v. United States, 564 U.S. –, 131 S.Ct. 2267, 2277 (2011) (stating the residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law") (internal quotation marks omitted); see also United States v. Chitwood, 676 F.3d 971, 978 n.3 (11th Cir. 2012) (stating that the Supreme Court's position "appears to foreclose a conclusion, at least by a lower court such as our own, that the residual clause is unconstitutionally vague").

Second, Weeks' contention rests on the erroneous view that a prior conviction under Florida's burglary statute, Fla. Stat. § 810.02, can qualify as a "violent felony" only under the ACCA's residual clause, and never under its enumerated-offenses clause.  The ACCA defines a "violent felony" as, among other things, an offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).  The Supreme Court has adopted the generic meaning of "burglary" for purposes of the ACCA, holding that a burglary conviction satisfies the enumerated-offenses clause

14

if it includes "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599, 110 S.Ct. 2143, 2158 (1990).  Although Florida's burglary statute facially encompasses both generic and non-generic burglaries, a conviction under the statute can still qualify as a generic burglary if the charging documents or other Shepard-approved sources show that the offense involved unlawful entry into a building or structure.  See United States v. Matthews, 466 F.3d 1271, 1274–75 (11th Cir. 2006); see also United States v. Rainer, 616 F.3d 1212, 1215 (11th Cir. 2010) (explaining that "a conviction under a non-generic burglary statute" still qualifies as a violent felony under the ACCA's enumerated-offenses clause "if the indictment shows that the defendant was charged only with a burglary of a building") (quotation marks, alterations, and ellipsis omitted).  Because the charging documents show that Weeks was charged with unlawfully entering into three separate buildings with intent to commit a crime, his convictions qualify as generic burglaries under the ACCA's enumerated-offenses clause and, thus, we do not even have to apply the residual clause.

For these reasons, we affirm Weeks' mandatory minimum sentence under the ACCA.

**AFFIRMED.**

15